### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AXIOM INSURANCE MANAGERS, LLC,     )
and DAN DJORDJEVIC,     )
     )
     Plaintiffs,  )   Case No. 11 CV 4736
     )
v.     )   Honorable William T. Hart
     )
CAPITOL SPECIALTY INSURANCE CORPORATION;  )
DAN DJORDJEVIC; and INDEMNITY INSURANCE  )
CORPORATION, RISK RETENTION GROUP,  )
     )
     Defendants.  )

### PLAINTIFFS' ANSWER TO CAPITOL'S COUNTERCLAIM
### AND AFFIRMATIVE DEFENSE

Plaintiffs Axiom Insurance Managers Agency, LLC ("Axom") and Dan Djordjevic ("Djordjevic"), (collectively, "Plaintiffs"), answer Defendant Capitol Specialty Insurance Corporation's ("Capitol") Counterclaim for Declaratory Judgment as follows:

### THE PARTIES

1.    At all relevant times, Capitol, a Wisconsin corporation, was an insurance company duly authorized under the laws of the State of Illinois to engage in the business of writing various types of insurance, including Commercial General Liability Coverage forms.

**ANSWER:**   Plaintiffs admit the allegations in Paragraph 1.

2.    Upon information and belief, at all relevant times, Axiom was a limited liability company organized under the laws of the State of Illinois, with its principal place of business in Rolling Meadows, Illinois, and is in the business of insurance.

**ANSWER:**   Plaintiffs admit the allegations in Paragraph 2.

3.    At all relevant times, Dan Djordjevic was a plaintiff in this action and is alleged to be a member of Axiom.

**ANSWER:**   Plaintiffs admits the allegations in Paragraph 3.

4.    Upon information and belief, Indemnity is a Delaware corporation, with its principal place of business in Maryland, and is in the business of insurance. Indemnity is named as a defendant herein solely as a necessary party to Capitol's counterclaim under Illinois law.

**ANSWER**:    Plaintiffs admit the allegations in Paragraph 4.

## JURISDICTION

5.    Plaintiffs filed this suit in the United States District Court for the Northern District of Illinois, Eastern Division, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**ANSWER**:    Plaintiffs admit the allegations in Paragraph 5.

6.    Capitol files this counterclaim pursuant to Federal Rule of Civil Procedure 13(g) and this Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367.

**ANSWER**:    Plaintiffs admit the allegations in Paragraph 6.

## GENERAL FACTS

7.    Capitol insures Axiom under Policy CS01333961, effective January 2, 2011 to January 2, 2012 (the "Capitol Policy"). A true and correct certified copy of the Capitol Policy is attached hereto as Exhibit A.

**ANSWER**:  Plaintiffs admit that it is insured by Capitol under Policy No. CS01333961

(the "Capitol Policy").  Plaintiffs further answer that the Capitol Policy was initially

effective from January 1, 2010 through January 1, 2011.  Plaintiffs subsequently renewed

the Capitol Policy in 2010, so that the Policy was also effective from January 2, 2011

through January 2, 2012.  Plaintiffs further state that the relevant provisions of the

Capitol Policy did not change from 2010 to 2011.

8.    Axiom and/or Djordjevic claim they are entitled to coverage under the Capitol Policy for three separate matters including: (1) a lawsuit filed by Indemnity against Plaintiffs in state court in Texas, case number 11-02505; (2) a lawsuit purportedly filed by Indemnity against Axiom in the United States District Court for the District of Maryland, case number 11-cv-1113; and (3) a Rule 11 Motion filed by Indemnity against Axiom in the United States District Court for the Northern District of Illinois, Eastern Division, upon information and belief believed to be part of case number 11-cv-02051.

**ANSWER**:    Plaintiffs admit the allegations in Paragraph 8.

9.     A true and correct copy of Plaintiff's Original Petition in the Texas lawsuit is attached hereto as Exhibit B.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 9.

10.     A true and correct copy of the Complaint and Motion for Temporary Restraining Order and for Preliminary Injunction purportedly filed in the Maryland lawsuit are designated herein as Exhibit C and will be filed with the Court either as public record or under seal subsequent to the Court's ruling on Capitol's motion for leave to file which is being filed contemporaneously herewith.

**ANSWER:**     Plaintiffs admit that Exhibit C is a true and correct copy of the Complaint

and Motion for Temporary Restraining Order and for Preliminary Injunction filed in the

Maryland lawsuit.

11.     A true and correct copy of the Rule 11 Motion and memorandum in support filed in the Illinois lawsuit is attached hereto as Exhibit D.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 11.

12.     Capitol has denied and continues to deny that it owes coverage to Plaintiffs for the Texas lawsuit and to Axiom for the Maryland lawsuit and denies that it owes coverage to Axiom for the Rule 11 Motion.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 12.

13.     There is an actual controversy between Capitol and Plaintiffs with respect to the question of insurance coverage for the Texas and Maryland lawsuits and the Rule 11 Motion; therefore, pursuant to 28 U.S.C. §2201(a), this Court has the authority to declare the rights and duties of the parties hereto and grant any other relief as may be appropriate and necessary.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 13.

**THE CAPITOL POLICY**

14.     Subject to the provisions, terms, definitions, exclusions and endorsements of the Capitol Policy, the Capitol Policy provides coverage for "bodily injury," "property damage," and "personal and advertising injury."

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 14.

15.     Plaintiffs do not contend that they are entitled to coverage for either the Texas or Maryland lawsuits or for the Rule 11 Motion under either the "bodily injury" or "property damage" sections of the Capitol Policy.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 15.

16.     With respect to the "personal and advertising injury" section of the Capitol Policy, the Capitol Policy contains the following insuring agreement, in relevant part:

**SECTION I - COVERAGES**

\*\*\*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.      Insuring Agreement

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. \* \* \*

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 16.

17.     With respect to the "personal and advertising injury" section of the Capitol Policy, the Capitol Policy contains the following exclusions, in relevant part:

2.      **Exclusions**

This insurance does not apply to:

      a.      **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

      b.      **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

      e.      **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

      f.      **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**p.** **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material information.

**ANSWER:** Plaintiffs admit the allegations in Paragraph 17.

18. With respect to the "personal and advertising injury" portion of the Capitol Policy, the Capitol Policy contains the following definitions, in relevant part:

**SECTION V - DEFINITIONS**

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

5

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. * * *

**ANSWER**:    Plaintiffs admit the allegations in Paragraph 18.

19.    With respect to the "personal and advertising injury" portion of the Capitol Policy, the Capitol Policy contains the following endorsement, in relevant part:

## EXCLUSION - INSURANCE AND RELATED OPERATIONS

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Section I - Coverage B -Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable

1.    Because of:

a.    Any obligation assumed by any insured; or

b.    The failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise with respect to any contract or treaty of insurance, reinsurance, suretyship, annuity, endowment or employee benefit plan, including applications, receipts or binders;

2.    Because of the membership in or contribution to or management or administration of any insurance plan, pool, association, insolvency or guarantee fund or any similar insurance fund, organization or association, whether voluntary or involuntary;

3.    Resulting from the rendering of, or failure to render, the following professional services:

a.    Advising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative thereof;

b.    Effecting insurance, reinsurance or suretyship coverages;

c.      Investigating, defending or settling any claim under any contract or treaty of insurance, self-insurance, reinsurance or suretyship;

d.      Auditing or maintaining accounts or records of others;

e.      Conducting an investment, loan or real estate department or operations;

f.      Acting in any capacity as a fiduciary or trustee for mutual funds, pension or welfare funds, annuities, endowments, employee benefit plans or other similar activities; or

g.      Performing any claim, investigative, adjustment, engineering, inspection, consulting, survey, audit, appraisal, actuarial or data processing service for a fee.

**ANSWER:**    Plaintiffs admit the allegations in Paragraph 19.

20.    With respect to the "personal and advertising injury" portion of the Capitol Policy, the Capitol Policy contains the following endorsement, in relevant part:

**COMBINATION ENDORSEMENT 1**

\*\*\*

**EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES**

This insurance does not apply to punitive or exemplary damages, fines, penalties or multiplied damages.

**ANSWER:**    Plaintiffs admit the allegations in Paragraph 20.

### THE TEXAS LAWSUIT

21.    In the Texas lawsuit, Indemnity alleges the following causes of action against Plaintiffs: Defamation & Business Disparagement; Tortious Interference with Existing Contracts; Tortious Interference with Existing Contracts; Tortious Interference with Existing Business Relationships; Tortious Interference with Prospective Business Relationships; Civil Conspiracy; and violation of the Texas Insurance Code, sections 5541.052, 541.051(3)(A), 541.053, 541.054, 541.055, and 541.061. The Texas lawsuit also seeks injunctive relief.

**ANSWER:**    Plaintiffs admit the allegations in Paragraph 21.

22.    The sections of the Texas Insurance Code which Indemnity alleges Plaintiffs violated prohibit the following acts:

a.  §541.052 - making, publishing, disseminating or circulating before the public a statement that is untrue, deceptive or misleading regarding the business of insurance.

b.  §541.051(3)(A) - making a misleading representation or misrepresentation regarding the financial condition of an insurer.

c.  §541.053 - directly or indirectly making, publishing, disseminating or circulating, or aiding, abetting, or encouraging the making, publication, dissemination, or circulation of a statement that is false, maliciously critical or derogatory to the financial condition of an insurer and is calculated to injure a person engaged in the business of insurance.

d.  §541.054 - to commit through concerted action or to enter into an agreement to commit an act of boycott, coercion or intimidation that results in or tends to result in the unreasonable restraint of or a monopoly in the business of insurance.

e.  §541.055 - make, publish, disseminate, circulate, or deliver, with the intent to deceive, a false statement of the financial condition of an insurer.

f.  §541.061 - misrepresent an insurance policy by making untrue statements of material fact, failing to state a material fact, making a statement that would mislead a reasonable person to a false conclusion of material fact, making a material misstatement of law, or failing to disclose a matter required by law to be disclosed.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 22.

23.     Indemnity alleges in the Texas lawsuit that Axiom and Djordjevic have engaged in a deliberate and malicious campaign to unlawfully compete with Indemnity in order to further Axiom's own financial interests. *See* ¶ 25 of Exhibit B.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 23.

24.     Indemnity further alleges that Axiom unlawfully disrupts insurance markets by undercutting Indemnity, and the rest of the market, on price; omits material information during the process of applying for coverage in order to support its offers to sell insurance for a fraction of the legitimate market prices, which are calculated with correct and legitimate financial information in accordance with industry standards and applicable federal and state laws; and failing to abide by the underwriting guidelines that its insurance company clients set for it to follow in choosing risks and establishing the terms on which coverage is provided. *See* ¶ 26 of Exhibit B.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 24.

25.     Indemnity alleges that Axiom has established a pattern of obtaining artificially low premiums for applicants by failing to complete portions of applications pertaining to the

applicant's revenues, and then understating the applicant's revenues on the insurance policies; and improperly discounting prior insurance claims in order to support its offers of coverage at substantially below market premiums. *See* ¶ 28 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 25.

    26.    Indemnity alleges that Axiom has established a pattern of improperly forgiving premiums for audits of their policyholders' businesses. *See* ¶ 30 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 26.

    27.    Indemnity alleges that Axiom routinely, and intentionally, offers insurance that directly violates the underwriting guidelines that insurers set for Axiom to utilize in choosing which policyholders to underwrite, and for the terms on which coverage is to be offered, and by issuing policies for Indemnity's competitor insurers on terms that are not acceptable to those insurers. *See* ¶ 31 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 27.

    28.    Indemnity alleges that Axiom provides its insurance company clients with falsified claims information and statistics in order to retain clients and "land" new ones. *See* ¶ 32 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 28.

    29.    Indemnity alleges that Axiom has converted and/or commingled policy premiums in disregard of its fiduciary obligations to its insurance company clients to bolster its own financial position. *See* ¶ 33 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 29.

    30.    Indemnity alleges that Axiom has intentionally and actively spread false and salacious mistruths about Indemnity which are designed to harm Indemnity, including misrepresentations about Indemnity's financial condition. *See* ¶ 34 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 30.

    31.    Indemnity alleges that Axiom knowingly and/or intentionally and/or with malice, disseminated, or caused to be disseminated, false statements denigrating Indemnity's financial strength. *See* ¶s 43, 44, 46 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 31.

    32.    Indemnity alleges that Axiom made statements about Indemnity's financial condition with the knowledge that the statements were false and with the intent of harming Indemnity's business and reputation. *See* ¶s 46, 64, 73, 74, 75, 79, 80 of Exhibit B.

     **ANSWER:**    Plaintiffs admit the allegations in Paragraph 32.

33.     Indemnity alleges that Axiom and Djordjevic purposefully and intentionally, with the intent to harm, created and submitted fraudulent and misleading documents to insurers; discounted, understated or omitted insurance applicants' revenues; disregarded or concealed applicant's prior loss histories; sold insurance at substantially below market rates; wrote insurance in violation of insurance company underwriting guidelines; reported false and misleading claims and other information to insurance company clients; converted and commingled policyholder premiums; and disseminated, or caused to be disseminated, false and salacious rumors and innuendo regarding Indemnity's financial strength. *See* ¶s 51, 57, 60, 61, 68, 101 of Exhibit B.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 33.

34.     Indemnity alleges that Axiom and Djordjevic knowingly and/or intentionally and/or with the intent to deceive made or caused to be made statements containing untrue, deceptive and misleading assertions, representations and statements about Indemnity in the conduct of its insurance business. *See* ¶ 81, 82, 86, 88, 91, 92, 103, 110 of Exhibit B.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 34.

35.     Indemnity alleges that Axiom and Djordjevic's actions were undertaken without justification or excuse. See ¶ 53 of Exhibit B.

ANSWER:     Plaintiffs admit the allegations in Paragraph 35.

### THE MARYLAND LAWSUIT

36.     In the Maryland lawsuit, Indemnity alleges that Axiom breached the terms of a confidential settlement agreement entered into by Indemnity and Axiom by making certain statements about Indemnity's financial condition and by publishing the confidential settlement agreement in the public record. *See* ¶s 20, 27, 28, 33 of Exhibit C.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 36.

37.     Indemnity alleges that Axiom's breaches of the confidential settlement agreement were blatant, egregious and intentional. *See* ¶ 6 of Exhibit C.

**ANSWER:**     Plaintiffs admit the allegations in Paragraph 37.

38.     Indemnity seeks liquidated damages from Axiom, per the terms of the confidential settlement agreement, for Axiom's breach of the settlement agreement. See ¶ 44 of Exhibit C.

**ANSWER:**     In the Maryland lawsuit, Indemnity seeks damages, including liquidated

damages, attorneys' fees and costs, and other and further relief that the Court deems fair

and just.

39.     Indemnity's causes of action in the Maryland lawsuit sound in breach of contract.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 39.

40.     The Motion for Temporary Restraining Order and for Preliminary Injunction filed in the Maryland lawsuit and referred to by Axiom in its Complaint in this matter seeks only injunctive relief, not monetary damages.

**ANSWER:**     Indemnity's Motion for Temporary Restraining Order and for Preliminary

Injunction filed in the Maryland lawsuit seeks injunctive relief and such other relief as the

Court deems appropriate.

### THE RULE 11 MOTION

41.     In the Rule 11 Motion and accompanying memorandum filed by Indemnity against Axiom, Indemnity alleges that Axiom and its attorneys violated Rule 11 and the applicable Rules of Professional Conduct with respect to the pleadings filed by Axiom in the United States District Court for the Northern District of Illinois. *See* ¶ 1 of the Rule 11 Motion attached as Exhibit D.

**ANSWER:**     The Rule 11 Motion and accompanying memorandum filed by Indemnity

alleges that Axiom and its Attorneys violated Rule 11 with respect to the pleadings filed by

Axiom and by, according to Indemnity, falsely representing Indemnity's financial condition.

42.     In its Rule 11 Motion, Indemnity seeks sanctions in the form of its attorney's fees and costs for preparing its Motion to Dismiss, its Rule 11 motion, and its response to Axiom's Motion for Temporary Restraining Order. See the "Wherefore" paragraph of the Rule 11 Motion attached as Exhibit D.

**ANSWER:**     In its Rule 11 Motion filed in the Illinois lawsuit, Indemnity seeks

sanctions in the form of attorneys' fees and costs in preparing its Motion to Dismiss the

First Amended Complaint, its Motion to Dismiss the Second Amended Complaint, its

Rule 11 Motion with respect to the First Amended Complaint, its Rule 11 Motion with

respect to the Second Amended Complaint, its response to Axiom's Motion for

Temporary Restraining Order, and such further relief as the Court deems just.

43.     The Rule 11 Motion seeks damages only for Axiom's and its attorney's violations of Rule 11, not for any injury incurred as a result of Axiom's conduct outside of the lawsuit. See Exhibit D.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 43.

44.     Upon information and belief, Axiom never tendered the defense of the Rule 11 Motion to Capitol.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 44.  Plaintiffs further answer that in an e-mail, dated July 5, 2011, from Dan Djordjevic to Kent Lawson at Capitol and cc'd to counsel representing Capitol, Plaintiffs tendered the defense of the Rule 11 Motion.

## COUNT I
### Declaratory Judgment as to the Texas Lawsuit

45.     Capitol restates and incorporates herein by reference paragraphs 1-35 as paragraph 45 of Count I of its counterclaim.

**ANSWER:**     Plaintiffs restate and incorporate herein by reference its answers to Paragraphs 1 through 35 as its answer to Paragraph 45.

46.     The following allegations in the Texas lawsuit do not constitute "personal and advertising injury" as defined by the Capitol Policy and, therefore, are not covered by the Capitol Policy: disrupting the insurance market by undercutting Indemnity and others on price; omitting material information during the process of applying for coverage in order to support Axiom's offers to sell insurance for a fraction of the legitimate market prices, which are calculated with correct and legitimate financial information in accordance with industry standard and applicable federal and state laws; failing to abide by the underwriting guidelines that its insurance company clients set for it to follow; obtaining artificially low premiums by failing to complete portions of applications pertaining to the applicant's revenues; understating the applicant's revenues on insurance policies; improperly discounting prior insurance claims; forgiving premiums for audits of their policyholders' businesses; offers insurance in violation of underwriting guidelines; issuing policies for Indemnity's competitors on terms that are not acceptable to those insurers; providing its insurance companies with falsified claims information and statistics; and converting and/or commingling policy premiums.

**ANSWER:**     Plaintiffs admit that the allegations listed in Paragraph 46 do not constitute "personal and advertising injury" as defined by the Capitol Policy.  Plaintiffs deny the remaining allegations in Paragraph 46.

47.    The allegations set forth in paragraph 46 do not constitute "personal and advertising injury" as defined by the policy and, specifically, do not constitute oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

**ANSWER:**    Plaintiffs admit that the allegations listed in Paragraph 46 do not constitute

"personal and advertising injury" as defined by the Capitol Policy

48.    As said allegations do not fall with the definition of "personal and advertising injury," there is no coverage for those allegations under the Capitol Policy.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 48.

49.    Alternatively, even if said allegations constituted "personal and advertising injury," said allegations are excluded from coverage by virtue of the "Exclusion - Insurance and Related Operations" endorsement to the Capitol Policy.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 49.

50.    The remaining allegations in the Texas lawsuit concern misrepresentations, mistruths, false statements, and deceptive and misleading assertions all of which are alleged by Indemnity to have been done knowingly and/or intentionally and/or purposefully and/or deliberately and/or with malice.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 50.

51.    The allegations set forth in paragraph 50 are all excluded from coverage by virtue of the following exclusions: Knowing Violation of Rights of Another, Material Published With Knowledge of Falsity, Distribution of Material in Violation of Statutes, and by virtue of the "Exclusion - Insurance and Related Operations" endorsement.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 51.

52.    As all of the operative allegations in the Texas lawsuit either fail to constitute "personal and advertising injury" or are otherwise expressly excluded from coverage, there is no coverage for Axiom or Djordjevic for the Texas lawsuit and Capitol has no duty to defend or indemnify Axiom or Djordjevic for the Texas lawsuit.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 52.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their

favor and against Capitol as to Count I of Capitol's Counterclaim, and for any further relief that

this Court deems just and proper.

## COUNT II
### Declaratory Judgment as to the Maryland Lawsuit

53.     Capitol restates and incorporates herein by reference paragraphs 1-20 and 36-40 as paragraph 53 of Count II of its counterclaim.

**ANSWER:**     Plaintiffs restate and incorporate herein by reference its answers to

Paragraphs 1 through 20 and Paragraphs 36 through 40 as its answer to Paragraph 53.

54.     In the Maryland lawsuit, Indemnity seeks to recover liquidated damages from Axiom for Axiom's intentional violation of certain terms of a confidential settlement agreement entered into by Axiom and Indemnity.

**ANSWER:**     In the Maryland lawsuit, Indemnity seeks damages, including liquidated

damages, attorneys' fees and costs, and other and further relief that the Court deems fair

and just.

55.     The Maryland lawsuit does not seek damages for "personal and advertising injury" and, therefore, does not constitute a "suit" under the Insuring Agreement in the Capitol Policy.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 55.

56.     The Maryland lawsuit is also expressly excluded from coverage by virtue of the following exclusions: Contractual Liability, Breach of Contract, Knowing Violation of Rights of Another, and by virtue of the "Exclusion - Insurance and Related Operations" endorsement.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 56.

57.     The Motion for Temporary Restraining Order and for Preliminary Injunction filed in the Maryland lawsuit does not constitute a "suit" for purposes of the Capitol Policy and does not seek "damages" as required by the Insuring Agreement in the Capitol Policy.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 57.

58.     Alternatively, even if the Motion for Temporary Restraining Order and for Preliminary Injunction constituted a "suit" and sought "damages" as required by the Insuring Agreement in the Capitol Policy, coverage for the motion would be precluded for the same reasons as set forth with respect to the Texas lawsuit.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 58.

59.    As the allegations in the Maryland lawsuit are either not covered or expressly excluded from coverage, there is no coverage for those allegations under the Capitol Policy and Capitol has no duty to defend or indemnity Axiom for the Maryland Lawsuit.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 59.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Capitol as to Count II of Capitol's Counterclaim, and for any further relief that this Court deems just and proper.

## COUNT III
### Declaratory Judgment as to the Rule 11 Motion

60.    Capitol restates and incorporates herein by reference paragraphs 1-20 and 41-44 as paragraph 60 of Count III of its counterclaim.

**ANSWER:** Plaintiffs restate and incorporate herein by reference its answers to Paragraphs 1 through 20 and Paragraphs 41 through 44 as its answer to Paragraph 60.

61.    The Rule 11 Motion filed by Indemnity against Axiom in the Illinois lawsuit seeks sanctions for Axiom's and its attorney's violations of Rule 11 and the applicable Rules of Professional Conduct.

**ANSWER:**    The Rule 11 Motion seeks sanctions for Axiom's and its attorney's violations of Rule 11 and because, according to Indemnity, falsely representing Indemnity's financial condition.

62.    The Rule 11 Motion does not constitute a "suit" as that term is defined by the Capitol Policy."

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 62.

63.    As it is not a "suit" under the terms of the Capitol Policy, there is no coverage for Axiom for the Rule 11 Motion and Capitol has no duty to defend or indemnify Axiom for the Rule 11 Motion.

**ANSWER:**    Plaintiffs deny the allegations in Paragraph 63.

64.    In the alternative, even if the Rule 11 Motion constituted a "suit" for purposes of the Capitol Policy, the damages sought in the Rule 11 Motion are expressly excluded from coverage pursuant to the Punitive or Exemplary Damages exclusion in the Combination Endorsement 1 in the Capitol Policy.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 64.

65.     In the alternative, even if the Rule 11 Motion constituted a "suit" and the damages sought were not excluded by the Punitive or Exemplary Damages exclusion in the Combination Endorsement 1 in the Capitol Policy, coverage would be precluded for the same reasons as set forth with respect to the Texas and Maryland lawsuits.

**ANSWER:**     Plaintiffs deny the allegations in Paragraph 65.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Capitol as to Count III of Capitol's Counterclaim, and for any further relief that this Court deems just and proper.

## AFFIRMATIVE DEFENSE

### Estoppel

1.     Plaintiffs timely tendered the Texas Lawsuit, the Maryland Lawsuit and the Rule 11 Motion to Capitol.

2.     With respect to the Texas Lawsuit, Capitol did not agree to defend Plaintiffs under a reservation of rights or file a declaratory judgment action. Instead, Capitol simply refused to defend Plaintiffs.

3.     With respect to the Maryland Lawsuit, Capitol did not agree to defend Plaintiffs under a reservation of rights or file a declaratory judgment action. Instead, Capitol simply refused to defend Plaintiffs.

4.     With respect to the Rule 11 Motion filed in the Illinois Lawsuit, Capitol did not agree to defend Plaintiffs under a reservation of rights or file a declaratory judgment action. Instead, Capitol has simply refused to defend Plaintiffs.

5.     As a result of Capitol's refusal to defend Plaintiffs for the past six months, Plaintiffs have been forced to pay their own defense costs during that period for the Texas Lawsuit, the Maryland Lawsuit, and the Rule 11 Motion.

6.    Given Capitol's refusal to defend Plaintiffs with respect to any of the claims, Capitol should be estopped from asserting or relying on any policy defenses.

WHEREFORE, Plaintiffs request that this Court hold that Capitol is estopped from asserting or relying on any policy defenses, and that Capitol is required to defend and indemnify Plaintiffs in the Texas Lawsuit, the Maryland Lawsuit, and with respect to the Rule 11 Motion.

Respectfully submitted,

AXIOM INSURANCE MANAGERS AGENCY, LLC and DAN DJORDJEVIC

By:       /s/ Maureen E. Browne
           One of their attorneys

Richard R. Winter (ARDC 6195210)
Maureen E. Browne (ARDC 6282583)
Holland & Knight LLP
131 S. Dearborn Street, 30th Fl.
Chicago, Illinois 60603
Phone: 312-263-3600
Fax: 312-578-6666
e-mail: rich.winter@hklaw.com
e-mail: maureen.browne@hklaw.com

## CERTIFICATE OF SERVICE

I, Maureen E. Browne, an attorney, hereby certify that I electronically filed **PLAINTIFF'S ANSWER TO CAPITOL'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE** and served all ECF filers, pursuant to the district court's ECF system, this 15th day of September, 2011.


_____ /s/Maureen E. Browne _____


Richard R. Winter
Maureen E. Browne
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603
(312) 263-3600
Firm No. 37472

#10608040_v1