

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AXIOM INSURANCE MANAGERS, LLC, ET AL. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 4736 |
| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiffs-counterdefendants Axiom Insurance Managers, LLC and Dan

Djordjevic[1] ("plaintiffs" or "Axiom") are insureds under a general liability policy

(the "Policy") issued by defendant-counterplaintiff Capitol Speciality Insurance

Corporation ("defendant" or "Capitol"). The two sides' dispute concerns

defendant's duty to defend (and potentially indemnify) under the Policy regarding

three underlying lawsuits between Axiom and Indemnity Insurance Corporation

---

[1]Djordjevic is a member of Axiom, a limited liability company. For present purposes, it is unnecessary to distinguish between the two.

Risk Retention Group ("Indemnity").[2] Axiom is an insurance program administrator; it works with retail insurance brokers and insurers to place liability insurance coverage. Axiom and Indemnity are competitors. In each of the underlying lawsuits, Indemnity alleged that Axiom made false and disparaging remarks regarding Indemnity. Plaintiffs' and defendants' central dispute is whether there was a duty to defend these allegations under the "personal and advertising injury" coverage of the Policy. Presently pending are cross motions for summary judgment, plaintiffs' motion being one for partial summary judgment since it does not seek to establish the amount of any defense costs nor does it seek summary judgment as to indemnity of any liability.[3]

_____

[2]Indemnity is named as a defendant in Capitol's Counterclaim, that is, a third-party defendant. Indemnity has answered the Counterclaim. It is not a party to the Policy, but is named in the Counterclaim because it is a party to the underlying lawsuits. Indemnity has not filed any briefs regarding the other parties' pending motions for summary judgment.

[3]This bench has copies of documents entitled "Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment" and "Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts." Neither has been filed in the record. In an Order dated September 29, 2011 [31], plaintiffs were granted leave to file a redacted version of the latter document, leaving out of the public record all or part of a complaint that had been sealed by another court. Plaintiffs shall promptly file the documents in the electronic filing system.

The parties generally do not disagree as to the facts, which primarily consist of the terms of the Policy and the pleadings in the underlying lawsuits. The only significant factual disagreement regards whether certain facts not expressly alleged in one of the underlying complaints can be considered in amplifying the allegations of that underlying complaint. The parties agree that Illinois law controls regarding the construction and application of the terms of the Policy.

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 823 N.E.2d 561, 564 (2005). Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. *Id.* In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. *State Farm Mut. Auto. Ins. Co. v. Villicana*, 181 Ill. 2d 436, 692 N.E.2d 1196, 1199 (1998). If the policy language is unambiguous, courts apply it as written. *Hobbs*, 823 N.E.2d at 564. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation. *Id.*; *see also Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 875 N.E.2d 1082, 1090 (2007).

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011).

In determining whether an insurer has a duty to defend, the court must compare the allegations in the underlying complaint with the relevant coverage provisions of the insurance contract. When making this comparison, the court does not look to particular legal theories or claimed evidence, but must focus on the allegedly tortious conduct stated in the underlying complaint. *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010); *Hurst-Roche Eng'rs v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995); *Allstate Ins. Co. v. Amato*, 372 Ill. App. 3d 139, 865 N.E.2d 516, 523 (1st Dist. 2007). A duty to defend exists as long as the allegations of the underlying complaint are potentially within the scope of coverage, even if the allegations are groundless, false, or fraudulent. *Medmarc*, 612 F.3d at 613 (quoting *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 194 Ill. 2d 96, 741 N.E.2d 253, 254 (2000)); *Pekin Ins. Co. v. XData Solutions, Inc.*, ___ Ill. App. 3d ___, 958 N.E.2d 397, 400 (1st Dist. 2011). This is true even if only one of several alleged theories of recovery falls within potential coverage. *XData*, 958 N.E.2d at 400. The burden is on the insured to prove that a claim falls within the coverage of the insurance policy. *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 905 N.E.2d 747, 752 (2009); *Ill. Sch. Dist. Agency v. St. Charles Cmty. Unit Sch. Dist. 303*, ___ Ill.

App. 3d ___, ___ N.E.2d ___, 2012 WL 1108519 *11 (1st Dist. March 30, 2012);

***Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.***, 2004 WL 2065065 *4 (N.D. Ill.

Sept. 10, 2004), *aff'd*, 435 F.3d 729 (7th Cir. 2006). The insurer has the burden of

proving that an exclusion applies, while the insured has the burden of proving that

an exception to an exclusion restores coverage. ***Santa's Best Craft, LLC v.***

***St. Paul Fire & Marine Ins. Co.***, 611 F.3d 339, 347 (7th Cir. 2010); ***Citizens Ins.***

***Co. of Am. v. Uncommon, LLC***, 812 F. Supp. 2d 905, 909 (N.D. Ill. 2011).

Renewals of the Policy occurred during the pertinent time period, but all

relevant Policy language remained the same. Both plaintiffs are named insureds

under the Policy. The Policy covers "sums that the insured becomes legally

obligated to pay as damages because of 'personal and advertising injury' to which

this insurance applies" and also includes a "duty to defend the insured against any

'suit' seeking those damages."

The Policy defines "suit" as:

> [A] civil proceeding in which damages because of
> "bodily injury," "property damage" or "personal and
> advertising injury" to which this insurance applies are alleged.
>> "Suit" includes:
>> (a) an arbitration proceeding in which such
>> damages are claimed and to which the insured
>> must submit or does submit with our consent; or

> (b) any other alternative dispute resolution
> proceeding in which such damages are claimed
> and to which the insured submits with our
> consent.

The Policy's definition of "personal and advertising injury" is:

> [I]njury, including consequential "bodily injury," arising out
> of one or more of the following offenses:
> * * *
> d.　Oral or written publication, in any matter, or
> material that slanders or libels a person or
> organization or disparages a person's or
> organization's goods, products or services;
> e.　Oral or written publication, in any manner, of
> material that violates a person's right of privacy;
> f.　The use of another's advertising idea in your
> "advertisement"; or
> g.　Infringing upon another's copyright, trade dress
> or slogan in your "advertisement."

The Policy's "breach of contract" exclusion applies to "'[p]ersonal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" The Policy's separate "contractual liability" exclusion excludes coverage for "'[p]ersonal and advertising injury' for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement."

There is an "insurance and related operations" exclusion which excludes coverage for "personal and advertising injury" liability "[r]esulting from the rendering of, or failure to render, the following professional services: a. Advising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative thereof; [or] b. Effecting insurance, reinsurance or suretyship coverages . . . ."

The "knowing violation of rights of another" exclusion excludes "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" The "material published with knowledge of falsity" exclusion excludes "'personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

The "distribution of material in violation of statutes" exclusion excludes "'personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . (3) Any statute, ordinance or regulation, other than the TCPA or CANSPAM Act of 2003, that prohibits or

limits the sending, transmitting, communicating or distribution of material information."

The Policy generally excludes coverage for "punitive or exemplary damages, fines, penalties or multiplied damages."

In March 2011, Indemnity sued Axiom in state court in Texas (the "Texas Suit"). Indemnity brought claims of defamation and tortious interference with existing contracts and business relationships, and tortious interference with prospective business relationships. Additionally, it brought claims labeled as business disparagement, civil conspiracy, and violations of various provisions of the Texas Insurance Code. In addition to compensatory damages, Indemnity's complaint requests disgorgement of profits, "statutory additional damages," and attorney fees. The Texas Insurance Code provides for attorney fees. Tex. Ins. Code § 541.152(a)(1). It also provides for treble damages if "the defendant knowingly committed the act complained of." *Id.* § 541.152(b). Indemnity alleged that Axiom participated (with other insurance agency defendants) in disseminating false information about Indemnity's financial condition and business. Such information allegedly was disseminated to Indemnity's insureds, prospective insureds, brokers, and others in the insurance marketplace. The

statements allegedly were designed to cause Indemnity to lose existing and potential customers and to gain additional insurance for Axiom and the other defendants. In addition to making false statements about Indemnity, it is alleged that Axiom engaged in unlawful underwriting practices, including knowingly misstating facts in its clients' insurance applications, that allowed Axiom to improperly undercut competitors such as Indemnity. In response to a request for disclosure in the Texas Suit, Indemnity identified former Axiom principal John Black as a person with knowledge of relevant facts because, while still a principal of Axiom, he had sent an April 25, 2010 email (the "Black email") and would have knowledge of the facts in that email regarding communications with the New York Times about printing a story about purported fraud at Indemnity and Axiom. In support of their summary judgment motion, plaintiffs provide a copy of the Black email. In the email, Black refers to the recipients as "some of my best friends." Black refers to an article the New York Times was likely to print in the next couple of days regarding fraud and corruption at Indemnity and for which he had provided information. He also states he planned to confront his Axiom superior the next day regarding fraud at Axiom and his proposal to clean that up, but indicated he expected the result would be the end of his work at Axiom.

Defendant contends the disclosure and email are extrinsic to the underlying Texas Suit and therefore cannot be considered in determining whether there is a duty to defend.

In April 2011, Indemnity brought suit against Axiom[4] in federal court in Maryland (the "Maryland Suit"). On August 24, 2011, the Maryland Suit was transferred to the Northern District of Illinois, Case No. 11 C 6028. On October 17, 2011, before any substantial activity in this District and shortly before settlement, No. 11 C 6028 was consolidated for all purposes into Case No. 11 C 2051, which is the "Illinois Suit" discussed below. In the Maryland Suit, Indemnity alleged that Axiom breached a 2010 Settlement Agreement that Indemnity and Axiom would not disparage each other. Like the Texas Suit, the Maryland Suit alleges Axiom made false statements as to Indemnity's financial condition. The Maryland Suit contains express allegations as to the Black email, as well as allegations regarding a subsequent email sent by Black. Both the original and amended complaints in the Maryland Suit label all claims as breach of contract claims. Indemnity's prayer for relief requests no damages other than

---

[4]In the Maryland Suit, Djordjevic is not named as a defendant.

liquidated damages in accordance with terms of the Settlement Agreement, as well as attorney fees as provided for in the Settlement Agreement.

In March 2011, Axiom[5] brought suit against Indemnity in the Northern District of Illinois (the "Illinois Suit"). In Lanham Act and abuse of process claims, Axiom alleged Indemnity misrepresented Indemnity's financial condition. In a May 2011 second amended complaint, Indemnity's president was added as a defendant and RICO, tortious interference, and breach of settlement agreement claims were added. In June 2011, Indemnity brought a Rule 11 sanction motion against Axiom alleging, *inter alia*, that allegations in the second amended complaint that Indemnity had made false representations as to its financial condition were themselves false and were demonstrably and indisputably wrong. Indemnity sought fees and costs expended in defending against the claims. In an order dated September 1, 2011, the Rule 11 motion was denied. *See Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, 2011 WL 3876947 *13 (N.D. Ill. Sept. 1, 2011) ("The Court will not grant Indemnity's motion for sanctions. First, Indemnity's contention that the Settlement Agreement bars this action in its entirety fails on the substantive grounds discussed above. Second, although not

_____

[5]Djordjevic is not a named plaintiff or counterdefendant in this lawsuit.

all of Axiom's claims satisfy the requirements of Federal Rule of Civil Procedure 8, none of those claims are frivolous. For that reason, sanctions are not presently appropriate for the filing of a frivolous claim.").

In its reply brief, plaintiffs represent that, on November 7, 2011 (after defendant filed its answer brief), a settlement was reached regarding all three underlying lawsuits. In the Illinois Suit (which at that point was consolidated with the Maryland Suit), there is a November 7, 2001 Order of the magistrate judge stating a settlement conference was held and an agreement reached, and the parties were directed to file a stipulated dismissal order with the district judge. On December 1, 2011, the case was dismissed without prejudice as settled, with leave to reinstate by February 10, 2012 and with the dismissal thereafter being with prejudice. No motion to reinstate has been filed nor any appeal. In the Texas Suit, on December 1, 2011, Axiom and Indemnity filed a notice of nonsuit and, the next day, the claims between those parties were "nonsuited without prejudice." A couple weeks later, remaining claims between Indemnity and other defendants were nonsuited without prejudice.[6]

_____

[6]Docket information for the Illinois Suit is available on this court's ECF system. Docket information for the Texas Suit (No. DC-11-02505) is available at http://www.dallascounty.org/public_access.php. Judicial notice is taken of the court records in the two Suits.

Relying on the material published with knowledge of falsity and knowing violation of rights of another exclusions, defendant contends there is no coverage for the Texas Suit because Axiom's conduct is alleged to be intentional and knowing, part of a deliberate and malicious campaign to harm Indemnity. Plaintiffs contend knowledge of falsity was not a required element of the defamation claim made in the Texas Suit and defendant does not contend otherwise.[7] Even though the Texas Suit alleges intentional and knowing conduct, the exclusions do not negate the duty to defend since plaintiffs could have been held liable for defamation without proof of intent and knowledge. *See Cincinnati,*

---

[7]Neither side makes any argument regarding the substantive law that applies to the claims made in the Texas Suit. In their opening brief, plaintiffs assert (apparently under Texas law) that knowledge of falsity is not a necessary element, but cite no case law. *See* Pl. Br. at 7. In its answer brief, defendant does not contend otherwise. *See* Def. Answer Br. [37] at 5 ("the Texas Lawsuit could hypothetically be satisfied by proof of merely negligent conduct"). In their Reply, plaintiffs cite Illinois law supporting that it is not a required element. *See* Pl. Reply [47] at 2-3 (citing *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001) ("*Cincinnati*"); *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 927 (N.D. Ill. 2004)). *See also Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 387 Ill. App. 3d 85, 898 N.E.2d 216, 240-41 (1st Dist. 2008); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (elements of defamation include "acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement"); *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 198 (Tex. App. 2011) (same).

260 F.3d at 745-46; *Utica Mut.*, 327 F. Supp. 2d at 927; *Central Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003). "The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." *Cincinnati*, 260 F.3d at 745 (quoting *W. Cas. & Sur. Co. v. Adams Cnty.*, 179 Ill. App. 3d 752, 534 N.E.2d 1066, 1068 (4th Dist. 1989)).

Defendant relies on *Del Monte Fresh Produce N.A. v. Transp. Ins. Co.*, 500 F.3d 640 (7th Cir. 2007).

> Our task is to evaluate the allegations in the class action cases to see whether the district court correctly concluded that the policy does not cover them. In conducting this analysis, "it is the actual complaint, not some hypothetical version, that must be considered." *Conn. Indem. [Co. v. DER Travel Serv., Inc.*], 328 F.3d [347,] 350-51 [(7th Cir. 2003)]. A complaint that is "barren of any mention of negligence, inadvertence, error, or mistake, or anything even implying such conduct [and says] . . . only that [the insured] deceived, schemed, and defrauded consumers," would not escape an exclusion clause like the one Transportation issued here. *Id.* at 350; *see also United Fire & Cas. Co. v. Jim Maloof Realty, Inc.*, 105 Ill. App. 3d 1048, 435 N.E.2d 496, 498 (1982) ("The inclusion of [a few isolated] words . . . does not transform what is in essence a specific intent to deceive into an aggravated form of negligence. The complaint must be read as a whole in order to assess its true nature."). We have previously noted that "[p]hrases such as 'mislead and conceal,'

'scheme or device,' and 'intentionally and willfully' are the paradigm of intentional conduct and the antithesis of negligent actions." *Conn. Indem.*, 328 F.3d at 351.

Implied claims that are not specifically alleged can be ignored. Legal labels in complaints are often incomplete or missing altogether; as we noted in an earlier decision, "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (quoting *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994)). In the *Cincinnati* case, the insurance policy had a similar "knowledge of falsity" exception, and the underlying claim in the complaint was one of tortious interference, which can be alleged as either a negligence or an intentional tort action. The court concluded that, because the complaint did not limit itself to intentional tort allegations, and because the insured could be found liable even if "knowledge of falsity" was not proved, there was a duty to defend. *Cincinnati*, 260 F.3d at 746-47. The important question is therefore whether the tendered complaint alleges facts that, if proved, would show that the insured has committed acts that fall within the policy's coverage. *Id.* at 745.

*Id.* at 643-44. In *Del Monte*, the allegations of the underlying complaint could only be read as being based on fraud on the part of the insured. *See id.* at 644-46.

Arguably **Cincinnati** and *Del Monte* are inconsistent. A subsequent district court case attempts to reconcile the two.

Del Monte and *Cincinnati* took different approaches but are not necessarily inconsistent. Both cases asked whether it was conceivable that the underlying plaintiff could recover from the insured without showing that the insured acted willfully or with knowledge of falsity. In *Del Monte*, the exclusion applied because the answer was no, based on the way the plaintiffs had structured their complaint. *See* 500 F.3d at 644 ("allegation of fraudulent and knowingly false statements" was "essential to the plaintiffs' claim" under Supreme Court precedent); *id.* at 645 ("Not one [complaint] could lead to relief on a showing of negligent conduct alone."). In *Cincinnati*, the exclusion did not apply because the answer was yes. *See Cincinnati*, 260 F.3d at 746 ("Proof of deliberateness would merely be icing on the cake.").

*Aearo Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 750 (S.D. Ind. 2009), *motion to vacate denied sub nom.*, *Aearo Corp. v. Chartis Specialty Ins. Co.*, 2010 WL 2925020 (S.D. Ind. July 19, 2010).

Subsequent to *Del Monte*, the Illinois Appellate Court, *Am. Hardware*, 898 N.E.2d at 240, stated: "[s]ignificantly, alleged deliberate misconduct does not always bring a claim within an intentional conduct exclusion," and then quoted from *Cincinnati*, 260 F.3d at 746. As recently reiterated by the Illinois Appellate Court: "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in

the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. [T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." *Farmers Auto. Ins. Ass'n v. Danner*, ___ Ill. App. 3d ___, ___ N.E.2d ___, 2012 WL 1202298 *5 (4th Dist. Feb. 23, 2012) (quoting *Am. Econ. Ins. Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 886 N.E.2d 1166, 1171 (1st Dist. 2008)). *See also Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 930 N.E.2d 1011, 1019 (2010) (citing *Holabird & Root*, 886 N.E.2d at 1171) ("the duty to defend does not require that the underlying complaint allege or use language affirmatively bringing the claims within the scope of the insurer's policy"); *Pekin Ins. Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 912 N.E.2d 250, 257-58 (2d Dist. 2009) (quoting *Ill. Emcasco Ins. Co. v. Nw. Nat'l Cas. Co.*, 337 Ill. App. 3d 356, 785 N.E.2d 905, 908 (1st Dist. 2003)) ("The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory

supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. The insurer may * * * refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage."); *Am. Econ. Ins. Co. v. DePaul Univ.*, 383 Ill. App. 3d 172, 890 N.E.2d 582, 587-88 (1st Dist. 2008).

In the "Facts" section of the Texas Suit complaint, allegations as to false statements regarding Indemnity's financial condition are that the statements were false and that the statements were intentionally passed to customers to benefit Axiom and harm Indemnity, but that part of the complaint does not allege that the statements were known to be false. *See* Texas Suit Compl. [Pl. Exh. 2] ¶¶ 35-42. The allegation of a "deliberate and malicious campaign," that Capitol presently quotes in its brief, is part of the allegations regarding Axiom obtaining business by violating underwriting practices and undercutting the price, not part of the false statement allegations. *See id.* ¶ 25. In the "Counts 1 & 2" subsection of the "Causes of Action" section, it is alleged Axiom "knowingly disseminated, or caused to be disseminated, false statements denigrating Indemnity's financial strength," *id.* ¶ 43, and Axiom "knowingly and intentionally made, or caused to be made, false and materially misleading statements about Indemnity's financial

condition," *id.* ¶ 46. In the tortious interference counts (3-5), the false statements regarding Indemnity's financial condition are also alleged to be knowing and intentional. *See id.* ¶¶ 52, 58.

As previously set forth, the defamation claim did not require proof that Axiom knew the statements about Indemnity's financial condition were false. The various tortious interference claims, though, require proof of willful and intentional interference. *See Anderton v. Cawley*, ___ S.W.3d ___, 2012 WL 1606665 *15-16 (Tex. App. May 8, 2012). The business disparagement claim requires proof of "malice," which can be "that the statements were made with knowledge they were false, with reckless disregard about the statements' truth, or with ill will or an intent to interfere with the plaintiff's economic interest." *Dworschak*, 352 S.W.3d at 198-99. As previously set forth, statutory treble damages relief for the Insurance Code violations required proof of knowing violations. In order to support other claims and treble damages, Indemnity had to allege knowing and intentional conduct. Including a claim for defamation, though, allowed Indemnity to potentially succeed in part even if could not prove Axiom knew the statements about Indemnity's finances were false. There was no good reason for Indemnity to include a defamation claim except as a fallback

position in case knowing falsehoods or reckless disregard of the truth could not be proven. The facts alleged in the Texas Suit complaint did not demonstrate that Indemnity could only recover with proof that would make the material published with knowledge of falsity and/or a knowing violation of rights of another.

Additionally, it is appropriate to consider facts extrinsic to the underlying complaint as long as such consideration does not require the determination of facts critical to resolving the underlying lawsuit. *Wilson*, 930 N.E.2d at 1019-20. Here, consideration of extrinsic facts cannot affect the outcome of the underlying suits since all the underlying suits are already completely resolved. Also, even if the Texas Suit were still pending, consideration of pleadings in other actions involving Indemnity only helps to understand Indemnity's allegations in the Texas Suit; it does not require resolving the merits of the facts alleged in either suit. In a separate suit against its former executive vice president, Indemnity alleged the vice president had disseminated to Djordjevic false information about Indemnity's finances and that Djordjevic had reasonably understood that information to be true. That allegation would be consistent with Axiom and Djordjevic passing on the false information without knowing it to be false.

The material published with knowledge of falsity exclusion and the knowing violation of rights of another exclusion do not preclude Capitol's duty to defend against the Texas Suit.

Capitol also contends the distribution of materials in violation of statutes exclusion applies to the Texas Suit. Indemnity alleges that Axiom's false statements about Indemnity's financial condition violated Texas Insurance Code sections 541.052, 541.051(3)(A), 541.053, 541.054, and 541.055. It is also alleged that the improper underwriting practices violated § 541.052. While the cited exclusion would exclude coverage if the Insurance Code violations had been Indemnity's only claims, it does not exclude coverage of the defamation claim which is not a statutory claim. As long as one claim was potentially covered, Capitol had a duty to provide a defense. *XData*, 958 N.E.2d at 400. *See also State Nat'l Ins. Co. v. White*, 2011 WL 5024258 *6-7 (M.D. Fla. Oct. 19, 2011) (under Florida law, since the statutory claim exclusion did not apply to at least one claim, insurer had a duty to defend). Capitol points to no language in the Policy nor case law supporting that as long as the alleged conduct would violate a statute, there is also no coverage for non-statutory claims based on the same or related conduct.

Last, Capitol contends the "insurance and related operations" exclusion applies to the Texas Suit. For that exclusion to apply, the allegedly wrongful communication must involve professional services of "[a]dvising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative." Plaintiffs contend that Black's communications with a newspaper do not constitute such professional services. Defendant does not contend otherwise. Defendant instead contends that the Texas Suit complaint makes no allegation regarding Black's communications with the New York Times. As previously discussed, the Texas Suit is settled so consideration of this extrinsic evidence does not affect the resolution of the underling lawsuit. Even if the Texas Suit were not already settled, presently taking into account this additional allegation would not affect the outcome of the Texas Suit. The Black communications may properly be considered. *Wilson*, 930 N.E.2d at 1019-20; ***Discover Fin. Servs. LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.***, 527 F. Supp. 2d 806, 822 (N.D. Ill. 2007). The insurance and related operations exclusion does not overcome the duty to defend.

The Texas Suit contains allegations of personal and advertising injury. The facts before the court do not support the application of any exclusion. Defendant had a duty to defend the Texas Suit.

As to the Maryland Suit, defendant contends that Suit only contains breach of contract claims, not any personal and advertising injury, and that the claims are otherwise excluded by the contractual liability and breach of contract exclusions. The Maryland Suit included allegations that Axiom disparaged Indemnity services. It contains allegations of personal and advertising injury. The question is whether any exclusion applies.

The Policy excludes "[p]ersonal and advertising injury' arising out of a breach of contract." The only exception to this exclusion is inapplicable to the present situation. The Maryland Suit contains only breach of contract claims based on breach of the parties' prior Settlement Agreement. It only seeks liquidated damages and attorney fees as provided for in the Settlement Agreement. It does not request any damages based on defamation or some other form of tortious disparagement. Plaintiffs contend this exclusion does not apply because the facts alleged would also support a defamation claim not based on contract.

Plaintiff cites ***Hugo Boss Fashions, Inc. v. Fed. Ins. Co.***, 252 F.3d 608 (2d Cir. 2001).[8] Applying New York law, the Second Circuit held:

> Federal contends that the "breach of contract" exclusion, which disclaims coverage for "advertising injury arising out of breach of contract," defeats plaintiffs' claim. But, as the district court properly found, this argument is foreclosed by the decision of the New York Court of Appeals in ***Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.***, 88 N.Y.2d 347, 668 N.E.2d 404 (1996). In that case, the Court of Appeals held that a "but for" test governs exclusion clauses such as the breach of contract exclusion at issue here. Thus, only if the advertising injury suffered by BMC would not exist but for the breach of contract, would the injury "arise out of" a breach of contract. And, only then would Federal not be obligated to indemnify HB USA. As the district court explained, however, "BMC's claims against Hugo Boss . . . exist independent of the contract. . . . BMC's trademark rights arose long before it entered into the 1990 agreement with Hugo Boss [Germany] and would exist even if BMC had never entered into that agreement and/or if that agreement had not been breached." ***Hugo Boss***, 1999 WL 993689, at *3. The "breach of contract" exclusion is, perhaps, susceptible to readings other than the one outlined above. Nevertheless, because this reading is, at the very least, a possible one, sufficient uncertainty as to the applicability of the breach of contract exclusion existed so that it could not serve to eliminate Federal's duty to defend.

---

[8]Plaintiffs actually cite the district court decision that was affirmed in part (including as to the pertinent issue), vacated in part, and reversed in part by the Second Circuit. *See **Hugo Boss Fashions, Inc. v. Fed. Ins. Co.***, 1999 WL 993689 *3 (S.D.N.Y. Nov. 2, 1999).

252 F.3d at 623 n.15. Applying Illinois law, and citing to *Hugo Boss*, the Seventh Circuit has construed "results from" language in an exclusion as requiring that the underlying claim "not have arisen but for" the excluded type of claim or the underlying claim "necessarily arises from" the excluded misconduct. *Santa's Best*, 611 F.3d at 348. Also, Illinois case law supports that "arising out of" is ambiguous and, when used in an exclusion, should be construed as requiring but for causation since that favors the insured. *See Cont'l Cas. Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 668 N.E.2d 59, 64 (1st Dist. 1996); *Md. Cas. Co. v. Chicago & N.W. Transp. Co.*, 126 Ill. App. 3d 150, 466 N.E.2d 1091, 1094 (1st Dist. 1984); *Goodheart-Willcox Co., Inc. v. First Nat'l Ins. Co. of Am., Inc.*, 2001 WL 501194 *7 (N.D. Ill. May 8, 2001).

Still, the Maryland Suit can only be read as necessarily arising from a breach of contract claim. The allegations of the complaint expressly rely on provisions of the settlement agreement. There is no request for compensatory damages, only a prayer for liquidated damages and attorney fees that can only be obtained for breach of the Settlement Agreement. Based on the breach of contract exclusion, there was no duty to defend the Maryland Suit. *Cf. Am. Family Mut. Ins. Co. v. Roth*, 381 Ill. App. 3d 760, 886 N.E.2d 1149, 1156 (1st Dist. 2008).

The Illinois Suit is an action brought by Axiom. Axiom's duty to defend claim related to the Illinois Suit is that defendant had a duty to defend it against the Rule 11 motion Indemnity filed in that lawsuit. Defendant contends there is no duty to defend the Rule 11 motion because (a) it is not a "suit" in that it does not involve personal and advertising injury and (b) it falls under the punitive or exemplary damages exclusion. In its Rule 11 motion in the Illinois Suit, Indemnity contended that certain allegations in Axiom's second amended complaint were demonstrably and indisputably wrong, including allegations regarding Indemnity's finances, Indemnity's rating by A.M. Best, and Indemnity threatening Axiom's business partners. It was also contended that Axiom's claims were fatally deficient because all were barred by a prior settlement and some or all failed to state cognizable claims. Indemnity also contended that the Illinois Suit was brought for the improper purpose of harassing Indemnity. Indemnity contended both the improper purpose and frivolousness provisions of Fed. R. Civ. P. 11(b) were violated and that it was entitled to sanctions under Rule 11(c). Indemnity requested sanctions in the form of the amount of fees and expenses it had incurred moving to dismiss Axiom's first and second amended complaints, moving for Rule 11 sanctions as to those two complaints, and in responding to

Axiom's motion for a temporary restraining order. Indemnity requests that the monetary sanctions be imposed on both Axiom and its attorneys in the Illinois Suit.

To be a "suit" covered by the Policy, Indemnity's Rule 11 motion must have sought damages because of personal and advertising injury. For present purposes, personal and advertising injury requires injury arising out of material that slanders or libels an organization (Indemnity) or disparages the organization's goods, products, or services. The injuries to Indemnity that are alleged in the Rule 11 motion are litigation costs arising from the allegedly legally frivolous and factually inaccurate allegations of Axiom's complaints. The gravamen of Indemnity's Rule 11 motion is the lack of legal and factual support for Axiom's allegations in the Illinois Suit. Whether Axiom's allegations disparaged Indemnity was irrelevant to the Rule 11 motion; it only mattered whether the facts alleged lacked sufficient factual support or were legally frivolous because not supported by law or barred by the prior settlement. The Rule 11 motion did not seek damages for personal and advertising injury. Therefore, Capitol did not have a duty to defend Axiom against the Rule 11 motion filed in the Illinois Suit.[9]

---

[9]It is unnecessary to determine whether coverage for the Rule 11 motion would also be precluded based on the exclusion for punitive or exemplary

For the foregoing reasons, plaintiffs are entitled to summary judgment that defendant had a duty to defend the Texas Suit. Defendant is entitled to summary judgment that it had no duty to defend the Maryland and Illinois Suits. Although issues of indemnity were not yet ripe at the time the present suit was filed, the indemnity issues are now ripe because all the underlying lawsuits have been fully resolved. *See Lear Corp. v. Johnson Elec. Holdings, Inc.*, 353 F.3d 580, 583 (7th Cir.2003); *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010). Since defendant had no duty to defend the Maryland and Illinois Suits, it also has no obligation to provide indemnification for those two suits. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073, 1081 (1993).

---

damages, fines, or penalties. For cases discussing whether sanctions under Rule 11 and similar bankruptcy and state court rules fall under the punitive, penalty, and fine exclusions of various malpractice policies, see *Figari & Davenport, L.L.P. v. Cont'l Cas. Co.*, 846 F. Supp. 513, 518-21, *vacated pursuant to settlement*, 864 F. Supp. 11 (N.D. Tex. 1994), *Carpenter, Weir & Myers v. St. Paul Fire & Marine Ins. Co.*, 1998 WL 976309 *12 n.2 (D. Kan. Oct 30, 1998), *modified*, 1999 WL 318150 (D. Kan. March 17, 1999), *Mitchell A. Kramer & Assocs. v. Robert S. Atkins & Assocs.*, 1991 WL 2419 (N.D. Ill. Jan 10, 1991), and the cases cited in these cases.

Plaintiffs also requests summary judgment as to being able to select its own counsel for representation in the underlying lawsuits. Since the underlying lawsuits are already fully resolved, this issue is moot.

Plaintiffs have not moved for summary judgment as to the amount of defense costs they are entitled to receive regarding the Texas Suit nor have they moved for summary judgment as to indemnity regarding the Texas Suit. Within two weeks, plaintiffs shall serve a demand for settlement upon defendant. At the next status hearing, the parties shall report on the possibility of settlement or, if settlement appears unlikely, be prepared to discuss procedures for resolving the remaining issues of the amount of defense costs and indemnity regarding the Texas Suit.[10]

IT IS THEREFORE ORDERED that plaintiffs' and defendant's motions for summary judgment [27, 29] are granted in part and denied in part. Plaintiffs are entitled to summary judgment as to liability on the duty to defend the "Texas Suit." Defendant is entitled to summary judgment dismissing the duty to defend

---

[10]Even if the parties cannot fully settle the case, another possibility is to agree as to the amount of a monetary judgment while preserving either or both sides' ability to appeal the rulings regarding the duty to defend each of the underlying lawsuits.

and indemnity claims related to the "Maryland Suit" and "Illinois Suit." No judgment will be entered at this time. A status hearing is set for July 19, 2012 at 11:00 a.m.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: JUNE 21, 2012